1   **Harout Greg Keosian, Esq.**, State Bar No.: 236352
2   *Email: hgk@keosianlaw.com*
    **Eileen Keusseyan, Esq.**, State Bar No.: 149482
3   *Email: ek@keosianlaw.com*
4   **KEOSIAN LAW LLP**
    16530 Ventura Boulevard, Suite 555
5   Encino, California 91436
6   Telephone: 1-818-986-9331
    Facsimile: 1-818-986-9341
7
8   Attorneys for Plaintiff

9                **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11

12
    KIDS INDOOR PLAYGROUND, INC.            Case No.:
13  dba WE PLAY
                                            UNLIMITED CIVIL
14              Plaintiff,
                                            **COMPLAINT**
15
    v.
16                                          1. **BREACH OF CONTRACT;**
                                            2. **BREACH OF THE COVENANT**
17  NORTHFIELD INSURANCE                       **OF GOOD FAITH AND FAIR**
    COMPANY; and DOES 1 through 50,            **DEALING;**
18  inclusive,                              3. **UNFAIR BUSINESS**
                                               **PRACTICES UNDER**
19                                             **BUSINESS AND PROFESSIONS**
                Defendants.                    **CODE § 17200, ET SEQ.;**
20
                                            4. **UNJUST ENRICHMENT;**
21                                          5. **NEGLIGENT**
                                               **MISREPRESENTATION; and**
22                                          6. **DECLARATORY RELIEF**
23
                                            **DEMAND FOR JURY TRIAL**
24

25

26

27  ///
28  ///

                              1
                           COMPLAINT

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

Plaintiff, KIDS INDOOR PLAYGROUND, INC. dba WE PLAY, (hereinafter referred to as "PLAINTIFF") complains against the above-named Defendant, NORTHFIELD INSURANCE COMPANY (hereinafter referred to as "DEFENDANT" or "NORTHFIELD") and alleges based on personal knowledge as to acts and events taking place in their presence or upon information and belief as to all other acts as follows:

## **NATURE OF THE ACTION**

1.     Plaintiff purchased a commercial property insurance policy to protect against losses resulting from catastrophic events, such as the current unforeseen COVID-19 pandemic. Plaintiff reasonably believed that its policy, which included business interruption coverage, would insure its business against losses resulting from any source of interruption.

2.     Plaintiff purchased, timely paid all premiums, and performed all duties required of it to be performed under the insurance policy (collectively the "policy").

3.     In breach of the insurance obligations that Defendant undertook in exchange for receipt of Plaintiff's premium payments, Defendant denied Plaintiff's insurance claims arising from the interruptions of Plaintiff's business caused by the COVID-19 pandemic and the closure orders[1]. The denial of these claims was notwithstanding the plain language of the policy, which provide coverage for such

---

[1]   Discussed in great detail under "The COVID-19 Pandemic and Closure Orders," below.

losses, and they did so fraudulently in violation of California law.

## PARTIES

### A. **Plaintiffs**

4.     Plaintiff, KIDS INDOOR PLAYGROUND, INC. dba WE PLAY, (hereinafter referred to as "KIDS INDOOR PLAYGROUND"), is a California Limited Liability Company with its principal place of business in the City of Covina, and County of Los Angeles. Plaintiff purchased policy Number WS387365 from Defendant, NORTHFIELD INSURANCE COMPANY. (*Attached hereto as* ***Exhibit A*** *is KIDS INDOOR PLAYGROUND, INC. dba WE PLAY'S full commercial policy).*

### B. **Defendants**

5.     Plaintiff is informed and believes, and based thereon alleges, that Defendant, NORTHFIELD INSURANCE COMPANY, is an unknown business entity with its principal place of business at 385 Washington Street, St. Paul, MN 55102. At all times relevant to the allegations contained herein, it was conducting business as an insurer in the State of California.

6.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and based on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

events and happenings referred to herein, and will ask leave of this Court to amend this complaint to assert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

7.   Plaintiff is informed and believes and based thereon allege that at all times mentioned herein, each of the Defendants was the agent, partner, joint venture, associate and/or employee of one or more of the other Defendants and was acting in the course and scope of such agency, partnership, joint venture, association and/or employment when the acts giving rise to the cause of action occurred.

## JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction over this action. The conduct giving rise to this action took place, in whole or in part, in the County of Los Angeles, California. This action is based, in substantial part, on the breach of an insurance contract concerning a California property and business and is based on violations of California law. The amount in controversy exceeds the minimum jurisdictional amount of unlimited civil cases.

9.   Venue is proper because the conduct giving rise to this action took place, in whole or in part, in the County of Los Angeles, California, by the named Defendant, NORTHFIELD INSURANCE COMPANY, and their agents and co-conspirators, and because the events and matters alleged herein concerned a policy of insurance pertaining to real and/or personal property located within the County of Los Angeles, California.

## **THE COVID-19 PANDEMIC AND GOVERNMENTAL ORDERS**

10.   COVID-19 is an infectious disease[2] caused by a coronavirus known as SARS-CoV-2 ("COVID-19"). It is believed that the first instance of the disease spreading to humans was in or around December 2019.

11.   In January 2020, this virus reached the United States and quickly spread across the country. The World Health Organization ("WHO") declared that the COVID-19 outbreak constituted a public health emergency of international concern.

12.   On March 4, 2020, Governor Gavin Newsom declared a state of emergency and on March 12, 2020, issued an executive order directing California residents to cancel large non-essential gatherings.[3]

13.   On March 11, 2020, the WHO declared the threat from COVID-19 constituted a global pandemic.[4]

---

[2]   While scientists studying the origins of COVID-19 have concluded that the virus likely resulted through an incidental contact with a wild or domesticated animal, "a few persistent voices, including respected microbiologist and biosafety advocate Richard Ebright, PhD, continue to highlight circumstantial evidence suggesting that SARS-CoV-2 escaped from a biohazard laboratory in Wuhan, China." This theory is shared by others, including Jamie Metzl, a foreign policy expert and author of *Hacking Darwin*. See *Controversy Aside, Why the Source of COVID-19 Matters*, Genetic Engineering & Biotechnology News, https://www.genengnews.com/insights/controversy-aside-why-the-source-of-covid-19-matters/ (last visited April 25, 2022).

[3]   See *Executive Order N-25-20*, Executive Department State of California, https://www.gov.ca.gov/wp-content/uploads/2020/03/3.12.20-EO-N-25-20-COVID-19.pdf (last visited April 26, 2022).

[4]   See *Timeline of WHO's response to COVID-19*, World Health Organization, https://www.who.int/news/item/29-06-2020-covidtimeline (last visited April 26, 2022).

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

14.   On March 13, 2020, President Trump declared the COVID-19 pandemic to be a national emergency.[5]

15.   On March 15, 2020, the Mayor of Los Angeles, Eric Garcetti, issued Executive Order No. 202.6, directing all "non-essential" businesses to be closed in Los Angeles.[6]

16.   On March 16, 2020, the Centers for Disease Control and Prevention ("CDC") and the National Coronavirus Task Force issued guidance to the American public advising individuals to adopt social distancing measures.[7]

17.   On March 19, 2020, Gov. Newsom issued Executive Order N-33-20, requiring "all individuals living in the State of California to stay home or at their place of residence except as needed" for essential service and engage in strict social distancing. The Order incorporated by reference California Government Code § 8665, which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

---

[5]  See *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, White House, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited October 22, 2020).

[6]  See *Public Order under City of Los Angeles Emergency Authority*, Los Angeles Mayor, https://www.lamayor.org/sites/g/files/wph446/f/article/files/Mayor%20Garcetti%20Emergency%20Order%20-%20March%2015%202020.pdf  (last visited October 20, 2020).

[7]  See *CDC Reports first known employee with COVID-19 Infection*, Centers for Disease Control and Prevention, https://www.cdc.gov/media/releases/2020/s0316-cdc-employee-covid-19.html (last visited April 26, 2022).

COMPLAINT

1

2

exceed one thousand dollars ($1,000.00) or by imprisonment for not to exceed six

3

months or by both such fine and imprisonment."

4

18.   On the same date, the City of Los Angeles issued its "Safer at Home"

5

order, which stated, in relevant part: "This Order is given because, among other

6

7

reasons, the COVID-19 virus can spread easily from person to person and it is

8

physically causing property loss or damage due to its tendency to attach to surfaces

9

for prolonged periods of time."[8]

10

11

19.   As of April 26, 2022, the number of confirmed cases of COVID-19 is

12

over 508 million worldwide, with 6,224,220 deaths, with the United States dealing

13

with 80,205,437 confirmed cases and over 983,989 reported deaths[9] – more than any

14

other country in the world.

15

16

20.   The scientific community, including the WHO, has recognized that

17

COVID-19 is a cause of real physical loss and damage.

18

19

21.   Generally accepted rules of construction in California provide that

20

wherever reasonably possible, courts will construe ambiguities in a standard form

21

policy against the drafter. The term "loss" has a separate and distinct meaning from

22

23

the term "damage," including, but not limited to, loss of use, loss of functionality for

24

25

[8]   See *Public Order under City of Los Angeles Emergency Authority*, Los Angeles Mayor,

26

https://www.lamayor.org/sites/g/files/wph446/f/page/file/20200527%20Mayor%20Public%20
Order%20SAFER%20AT%20HOME%20ORDER%202020.03.19%20%28REV%202020.05.

27

27%29.pdf  (last visited October 20, 2020).

28

[9]   See WHO Coronavirus Disease (COVID-19) Dashboard, World Health Organization,
https://covid19.who.int/ (last visited April 26, 2022).

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

COMPLAINT

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

intended purpose, or loss of value, any and all of which would be reasonable constructions of the term "loss."

22.  California and other jurisdictions have found "physical loss" without finding actual physical damage to the insured property in its popular sense.[10]

23.  California Courts have also held that "loss of use" constitutes physical loss.[11]

24.  State Supreme courts have found "physical loss" where a building becomes temporarily or permanently unusable or uninhabitable, or where a building loses its function, value, or usefulness.[12]

---

[10]  In *Cooper v. Travelers Indemnity Company of Illinois*, a health department forced a tavern to close because of water contaminated with E. coli. *Cooper v. Travelers Indem. Co. of Illinois*, 2002 WL 32775680, *1 (N.D. Cal. Nov. 4, 2002). The U.S. District Court for the Northern District of California held that E. coli constituted direct physical damage to the property, which triggered the business income coverage. (*Id.* at *5). The court also determined that damage to "covered property" was "not required by the terms of the policy to trigger coverage of loss of business income." *Id.*

[11]  In *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, the U.S. District Court for the Central District of California held that lost property, although not physically damaged, constituted physical loss of insured property. *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767, *3 (C.D. Cal. July 11, 2018). The court ruled that "the phrase 'loss of' includes the permanent dispossession of something and that: [u]nder an "ordinary and popular meaning," the "loss of" property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged. Furthermore, to interpret "physical loss of" as requiring "damage to" would render meaningless the "or damage to" portion of the same clause, thereby violating a black-letter canon of contract interpretation—that every word be given a meaning. See Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Lyons v. Fire Ins. Exch.*, 161 Cal.App.4th 880, 886 (2008) (insurance policy must be read so "that all words in a contract are to be given meaning")." *Id.*

[12]  In *US Airways, Inc. v. Commonwealth Ins. Co.*, the court held that the government's order to close airports and halt all flights after the September 11 terrorist attacks triggered civil authority coverage for US Airways' losses. *US Airways, Inc. v. Commonwealth Ins. Co.*, 64 Va. Cir. 408 (Va. Cir. Ct. 2004). There, the airport authority (civil authority) ordered Reagan

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

25.   Emerging research on the virus and recent reports from the CDC indicate that COVID-19 strains physically infect and can stay alive on surfaces for extended periods, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous.

26.   While infected droplets and particles carrying COVID-19 may not be visible to the naked eye, they are physical objects which travel to other objects and cause harm.

27.   The global COVID-19 pandemic has physically impacted both public and private property and physical spaces around the world, as well as the right of the general public to gather and utilize business locations.

28.   The resulting economic harm from these orders and from the widespread physical presence of COVID-19 has been significant.

29.   The global COVID-19 pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

---

National Airport to close down, and the Federal Aviation Administration ordered all airspace to be closed. US Airways filed an insurance claim for business income loss as a result of business interruption caused by the FAA's nationwide ground stop orders and closure of the Reagan National Airport. The court rejected the insurer's argument that the business interruption policies did not cover the losses. *Id.*

Additionally, in *Gregory Packing Inc. v. Travelers Property Casualty. Co. of America*, No. 12-4418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014), the U.S. District Court for the District of New Jersey found that Gregory Packaging incurred "physical loss of or damage to" its facility when ammonia gas was discharged into the facility's air, rendering the facility temporarily unfit for occupancy.

30.   On October 7, 2020, a study by the *Virology Journal* found that COVID-19 "remains viable for at least 28 days." The study also states that "the persistence of SARS-CoV-2 on surfaces demonstrate significantly longer time points than previously published data for SARS-CoV-2."[13]

31.   Given the absence of commercially-available tests for surfaces and aerosol presence of COVID-19, positive test results are not and cannot be the only means of proving the presence of COVID-19.

32.   An article titled *Significance of Fomites in the Spread of Respiratory and Enteric Viral Disease*, published on December 17, 2020, stated that "fomites consist of both porous and nonporous surfaces or objects that can become contaminated and serve as vehicles in transmission." The article also states that "once a fomite is contaminated, the transfer of infectious virus may readily occur between inanimate and animate objects, or vice versa, and between two separate fomites."[14]

33.   The presence of COVID-19 on property, including Plaintiff's property, causes a distinct, demonstrable, physical change and/or tangible alteration which results in continuous physical loss and/or damage to the property and is hazardous to

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

---

[13]   See *The effect of temperature on persistence of SARS-CoV-2 on common surfaces.*
https://virologyj.biomedcentral.com/articles/10.1186/s12985-020-01418-7 (visited October 11, 2021).

[14]   See *Significance of Fomites in the Spread of Respiratory and Enteric Viral Disease.*
https://journals.asm.org/doi/10.1128/AEM.02051-06 (visited October 11, 2021).

human health.

34.   COVID-19 is certain to be carried by a number of individuals who visit Plaintiff's property, therefore mere cleaning and disinfecting of the property and the indoor air does not repair or remediate the actual physical and tangible alteration to property caused by COVID-19 because continued use of the property results in continuous reintroduction of COVID-19 to the property.

35.   The presence of COVID-19 has deprived and continues to deprive Plaintiff of the functionality and reliability of its property by transforming the air and property into a dangerous instrumentality which affects Plaintiff's ability to operate its business in a manner consistent with its intended purpose.

36.   Plaintiff, KIDS INDOOR PLAYGROUND, went from operating and seeing customers multiple days a week, to completely shutting down for the majority of 2020.

37.   Since reopening, Plaintiff has implemented infection control procedures by requiring customers to keep a six-feet distance from others at all times and wear masks while on the premises. Additionally, Plaintiff has reduced the occupancy capacity in its store.

38.   At all times herein alleged, COVID-19 was present at Plaintiff's premises. Plaintiff has enforced new and costly cleaning procedures for its premises due to the presence of COVID-19 such as hiring a company to sanitize the store and receiving a certificate from them, washing the carpets, purchasing hand sanitizing

machines, purchasing air purifiers, and re-painting the walls.

39.   Plaintiff was forced to replace toys, play sets, cups, plates and had to purchase new games such as an air hockey table due to throwing out the previous ones.

40.   Plaintiff has implemented procedures for its employees and customers to wear masks while on the premises as well as sanitizing its property in addition to cleaning the toys and equipment after seeing customers.

41.   This physical loss and/or damage to property, has required Plaintiff to incur extra expense, adopt remedial and precautionary measures to restore and remediate the air and surfaces at its property, and limit or cease operations.

42.   As a result of physical loss and/or damage caused by COVID-19 to property, due to its ability to attach to surfaces for prolonged periods, remain viable in indoor air, and render property unsafe for normal use, Governmental Orders were implemented to limit, restrict, or prohibit total or partial access to Plaintiff's property.

43.   The CDC issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

44.   The transmission of COVID-19 through human contact with affected property also contributed to the issuance of the orders.

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

45.   Plaintiff was damaged from the presence of COVID-19 on its property to the same extent it was damaged by the stringent orders.

46.   The transmission of COVID-19, the damage on property caused by COVID-19, and the Governmental Orders, have all had a devastating effect on Plaintiff.

## DEFENDANTS' WRONGFUL DENIAL OF COVERAGE

47.   Business interruption coverage is an optional insurance benefit that is available to businesses to minimize risk and sustain them in situations where business operations are forced to be ceased and/or are severely restricted, which, in turn, causes a loss of business income.

48.   Plaintiff purchased comprehensive commercial liability and property insurance from Defendants to insure against risks the business might face. Such coverage includes, among other things, business income coverage for the loss, extended business income coverage, business income and extra expense coverage, business income from dependent properties, and "civil authority" coverage. Once triggered, the policy pays actual losses sustained for the business income and extra expense coverage.

49.   The language in the policy is language that is "adhesionary" in that Plaintiff was not a participant in negotiating or drafting its content and provisions.

50.   Plaintiff possessed no leverage or bargaining power to alter, change, modify, or negotiate the terms of the policy.

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

COMPLAINT

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

51.   Due to the closure orders, as well as the presence of COVID-19, Plaintiff has suffered and continues to suffer substantial lost business income and other financial losses totaling millions of dollars.

52.   These extraordinary losses of business income and lost wages are precisely why Plaintiff secured the business interruption policy with the Defendants.

53.   As a direct result of the orders, Plaintiff promptly submitted claims for its business income losses to Defendants, but Defendants rejected the claims without even the slightest of an investigation, resulting in a complete and utter violation of its contractual, statutory, regulatory, and other legal obligations, including but not limited to, the obligations set forth in the California Fair Claims Settlement Practices Regulations (Cal. Code Regs. tit. 10; sections 2695.1 et seq.).

54.   On April 14, 2020, California Insurance Commissioner Ricardo Lara issued a notice to all insurance companies in California, requiring them to comply with their contractual, statutory, regulatory, and other legal obligations and fairly investigate all business interruption claims caused by COVID-19. Despite the department's ongoing guidance, it has received "numerous complaints from businesses, public officials, and other stakeholders asserting that certain insurers, agents, brokers, and insurance company representatives are attempting to dissuade policyholders from filing a notice of claim under its Business Interruption insurance coverage, or refusing to open and investigate these claims."[15]

---

[15]   See *Requirement to Accept, Forward, Acknowledge, and Fairly Investigate All Business*

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

55.   California imposes upon insurers the legal obligation to promptly conduct fair, balanced, and thorough investigations of all bases of claims for benefits made by their insureds, with a view toward honoring the claims. As part of these obligations, an insurance company is required to diligently search for and consider evidence that supports coverage of the claimed loss, and in doing so must give at least as much consideration to the interests of their insureds as it gives to their own interests.

56.   Notwithstanding the foregoing, Defendants denied Plaintiff's claims for coverage. In a cursory denial letter, Defendants took the position that the COVID-19 outbreak did not cause a direct physical loss of or damage to the property. Although Plaintiff's policy also included civil authority coverage, it was denied on same or similar grounds.

57.   Defendants' denial is contrary to the terms and conditions of the policy and applicable law, which gives effect to plain language, construes ambiguity in favor of coverage, and narrowly construes exclusions, the applicability of which insurers have the burden of proving. Defendants breached their obligation and responsibility to provide coverage available through the policy to Plaintiff due to its covered loss of business income.

---

*Interruption Insurance Claims Caused by the COVID-19 Pandemic*, California Department of Insurance, http://www.insurance.ca.gov/0250-insurers/0300-insurers/0200-bulletins/bulletin-notices-commiss-opinion/upload/Business-Interruption-Claims-Notice.pdf (last visited April 26, 2022).

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

58.   As a result of Defendant's coverage denial and breach of the insurance policy it issued, Plaintiff has suffered and will continue to suffer damages.

59.   Additionally, Defendants, by and through their authorized employees, and DOES 1 through 50, inclusive, represented to be registered, licensed, and authorized insurance brokers, who undertook the obligations to place insurance coverage for Plaintiff and to assist with any questions or concerns it had about the policy. In doing so, Defendants represented that the policy contained coverage for its business under all circumstances, or Defendants failed to explain that certain situations, such as a virus, would not be covered and completely failed to explain virus exclusions.

60.   Defendant knew that Plaintiff would rely, and did justifiably rely, upon the experience, skill, and expertise of Defendant, their employees, and DOES 1 through 50, inclusive, in their representations, or lack thereof.

61.   Plaintiff purchased the policy with an expectation that it was purchasing a policy that would provide coverage in the event of business interruption and extra expenses, such as that suffered by Plaintiff as a result of COVID-19.

62.   At no time had Defendant, or its agents, notified Plaintiff that the coverage that Plaintiff had purchased pursuant to an all-risk policy that included business interruption coverage, had exclusions and provisions that purportedly undermined the very purpose of the coverage, of providing benefits in the

occurrence of business interruption and incurring extended expenses.

63. The purported exclusions of the policy that Defendant has or is expected to raise in defense of Plaintiff's claims under the Civil Authority coverage of the policy are contradictory to the provision of Civil Authority Order coverage and violates the public policy of California and other states as a contract of adhesion and hence is not enforceable against Plaintiff.

64. Access to Plaintiff's businesses were severely limited and/or prohibited by Civil Authority Orders which precluded Plaintiff from operating its Insured Property in the manner intended, for which such insurance was purchased. The policy provides for coverage for actual loss of business sustained and actual expenses incurred as a covered loss caused by the prohibitions of the Civil Authority Orders in the area of Plaintiff's Insured Property, which apply to circumstances presented by Plaintiff.

65. The reasonable expectations of Plaintiff, *i.e.*, an objectively reasonable interpretation by the average policyholder of the coverage that was being provided, was that the business interruption coverage included coverage when a civil authority forced closure of the business for an issue of public safety such as that involving the COVID-19 pandemic in the immediate area surrounding the Insured Property.

66. The policy does not exclude the losses suffered by Plaintiff and therefore, the policy does provide coverage for the losses incurred by Plaintiff.

67. Plaintiff suffered direct loss or damage within the definitions of the

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

policy as loss of use of property as it was intended to be used, as here, constitutes loss or damage.

68.   The virus and bacterium exclusions do not apply because Plaintiff's losses were not solely caused by the virus, bacterium or other microorganism. Instead, Plaintiff losses were *also* caused by the entry of Civil Authority Orders to mitigate the spread of COVID-19. The Civil Authority Orders were issued because of damage to individuals and property caused by COVID-19. The Civil Authority Orders were more than mere social distancing enactments but required closure.

69.   The Civil Authority Orders prohibited and limited access to Plaintiff's Insured Property. Plaintiff's businesses were denied access to the general public and were unable to operate its business as intended at due to the Civil Authority stay-at-home orders. The Civil Authority Orders were entered in response to dangerous physical conditions described above resulting from COVID-19.

70.   As a result of the presence of COVID-19 and the Civil Authority Orders, Plaintiff lost Business Income and incurred Extra Expense.

71.   A French Court has determined that business interruption coverage applies to the COVID-19 Pandemic.[16]

72.   The determination by a Court of another country that coverage exists is

---

[16]   See *French Court Orders AXA to Pay Restaurant's COVID-19 Business Interruption Losses; AXA Vows to Appeal*, Insurance Journal, https://www.insurancejournal.com/news/international/2020/05/22/569710.htm (last visited April 26, 2022).

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

consistent with public policy that in the presence of a worldwide Pandemic, such as COVID-19, businesses that possess business interruption insurance coverage should recover their losses from the insurance carriers.

73.   Similarly, on September 15, 2020, the United Kingdom's High Court found that the 'disease' and/or 'denial of access' clauses in the various insurance policy wordings provide coverage in the circumstances of the COVID-19 pandemic, and that the trigger for coverage caused policyholders' losses. The High Court further noted:

> The fact that a provision in a contract is expressed as an exception does not necessarily mean that it should be approached with a pre-disposition to construe it narrowly. Like any other provision in a contract, words of exception or exemption must be read in the context of the contract as a whole and with due regard for its purpose. As a matter of general principle, it is well established that that if one party, otherwise liable, wishes to exclude or limit his liability to the other party, he must do so in clear words; and that the contract should be given the meaning it would convey to a reasonable person having all the background knowledge which is reasonably available to the person or class of persons to whom the document is addressed.

*See* https://www.fca.org.uk/publication/corporate/bi-insurance-test-case-judgment.pdf.

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

## I.

## FIRST CAUSE OF ACTION

**(By Plaintiff for Breach of Contract against Defendant NORTHFIELD**

**INSURANCE COMPANY, and DOES 1 through 50, Inclusive)**

74.   Plaintiff incorporates in this cause of action the allegations of Paragraphs 1 through 73 of this Complaint as though set forth herein in full.

75.   At all times relevant, Plaintiff has paid all premiums and fulfilled or performed all of its obligations under its policy.

76.   Defendant, NORTHFIELD INSURANCE COMPANY, had contractual duties to provide Plaintiff with insurance coverage under the applicable policy coverages, including those coverages specifically alleged herein.

77.   In denying Plaintiff's insurance claims, and otherwise refusing to perform under the issued policy, Defendant breached those duties.

78.   As a result of those breaches, Plaintiff has been damaged in the amount of coverage to which it is entitled under its policy, and in an amount to be proven at trial, and for which Plaintiff seeks compensatory, general, and other monetary damages (including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incident damages and out-of-pocket expenses) in an amount to be determined at trial, plus interest.

/ / /

/ / /

COMPLAINT

# II.

## SECOND CAUSE OF ACTION

**(By Plaintiff for Breach of Covenant of Good Faith and Fair Dealing against Defendant NORTHFIELD INSURANCE COMPANY, and DOES 1 through 50, Inclusive)**

79.   Plaintiff incorporates in this cause of action the allegations of Paragraphs 1 through 78 of this Complaint as though set forth herein in full.

80.   When Defendant, NORTHFIELD INSURANCE COMPANY, issued a policy to Plaintiff, it undertook and was bound to the covenants implied by law that it would deal fairly and in good faith with Plaintiff, and not engage in any acts, conduct, or omissions that would impair or diminish the rights and benefits due to Plaintiff, according to the terms of the policy.

81.   Upon information and belief, Defendants breached the implied covenant of good faith and fair dealing arising out of the policy by, unreasonably and in bad faith, denying Plaintiff's insurance coverage to which Plaintiff is entitled under its policy. Specifically, among other conduct, Defendants:

    a.   Failed or refused to perform a fair, objective, and thorough investigation of the claim as required by the California Insurance Code;

    b.   Asserted coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiff's claims;

    c.   Placed unduly restrictive interpretations on the policy terms for the

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

purpose of denying coverage due under the policy;

d.  Failed to give Plaintiff's interests equal consideration with their own; and

e.  Forced Plaintiff to institute litigation to recover amounts due under the policy.

82.  Plaintiff alleges on information and belief that there are numerous other individuals and groups insured by Defendants who were or are similarly situated to Plaintiff and who are also being denied benefits under the same unlawful and non-applicable policy provisions and/or exclusions being applied to Plaintiff. At such time as Plaintiff learns the names of such persons, Plaintiff may seek leave of court to join such persons as Plaintiffs in this action.

83.  In committing the above-referenced breaches, Defendants intended to and did vex, damage, annoy, and injure Plaintiff. Said conduct was intentional, willful, and with conscious disregard of Plaintiff's rights, and was malicious, oppressive and/or fraudulent under California Civil Code § 3294, thereby entitling Plaintiff to punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants and to deter future similar conduct.

84.  Based on the above, Plaintiff alleges that Defendants have committed institutional bad faith that is part of a repeated pattern of unfair practices and not an isolated occurrence. The pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in Defendants' established company

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

policy.

85.   As a direct and proximate result of the above-referenced breach, Plaintiff has had to retain attorneys to enforce its right to the insurance coverage to which it is entitled under its policy, and have thereby been injured and damaged. Therefore, Defendants are liable to Plaintiff for those attorney fees, witness fees, and costs of litigation reasonably necessary and incurred by Plaintiff in order to obtain the benefits of its policy.

86.   As a further proximate result of the aforementioned bad faith conduct by Defendants, Plaintiff has suffered and will continue to suffer damages. These damages include interest on the withheld and unreasonably delayed payments due under its policy and other special economic and consequential damages, of a total amount to be shown at trial.

87.   Plaintiff, therefore, is entitled to recover and seek in connection with this cause of action: 1) an award of general damages and other monetary damages, including all foreseeable consequential and incidental damages for diminution in value, loss of use, and other incidental damages and out-of-pocket expenses, plus interest, in an amount to be determined at trial; 2) punitive and exemplary damages in an amount to be determined at trial; 3) Plaintiff's costs of suit; and 4) Plaintiff's reasonable attorney's fees in connection with this action.

/ / /

/ / /

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

COMPLAINT

**III.**

**THIRD CAUSE OF ACTION**

**(By Plaintiff for Unfair Business Practices under Business and Professions Code § 17200, _et seq._ against Defendant NORTHFIELD INSURANCE COMPANY, and DOES 1 through 50, Inclusive)**

88.   Plaintiff incorporates in this cause of action the allegations of Paragraphs 1 through 87 of this Complaint as though set forth herein in full.

89.   California's Unfair Competition Law, as codified by California Business & Professions Code § 17200, _et seq._, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. It is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent business act or practice. Any unlawful, unfair, or fraudulent business practice that causes injury to consumers falls within the scope of California's Unfair Competition Law.

90.   Defendant, NORTHFIELD INSURANCE COMPANY'S, acts and practices, as described herein, constitute unlawful or unfair business practices against Plaintiff in violation of California Business and Professions Code § 17200, _et seq._ These unlawful or unfair acts and practices include, but are not limited to:

   a.   Failing or refusing to perform a fair, objective, and thorough investigation of the claim as required by the California Insurance Code;

   b.   Asserting coverage defenses that were legally and/or factually invalid

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

COMPLAINT

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

and thereby delaying resolution of Plaintiff's claims;

c. Placing unduly restrictive interpretations on the policy terms for the purpose of denying coverage due under the policy;

d. Failing to give Plaintiff's interests equal consideration with their own;

e. Forcing Plaintiff to institute litigation to recover amounts due under the policy;

f. Charging and accepting Plaintiff's premiums in exchange for purported coverage for losses caused by an order of a civil authority, by direct physical damage to the insured premises, by a virus, and by other business interruptions, without any intention of satisfying those claims in an emergency such as the COVID-19 pandemic and the related closure orders; and

g. Denying Plaintiff's claims as part of a company-wide and/or industry-wide policy of denying all business interruption claims related to the COVID-19 pandemic.

91. Any claimed justification for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiff. Defendants' acts and practices are immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiff, and/or have a tendency to deceive Plaintiff.

92. By reason of Defendant's fraudulent, deceptive, unfair, and other wrongful conduct as alleged herein, said Defendant violated California Business and

Professions Code § 17200, *et seq.*, by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of the benefits of Defendants' financial products and services.

93.    Defendant perpetrated these acts and practices against Plaintiff, and as a direct and proximate result of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is currently unascertained. Pursuant to California Business and Professions Code § 17203, Plaintiff is entitled to restitution of all the monies paid to Defendants for retaining benefits that were due and owing to Plaintiff (with interest thereon), to disgorgement of all Defendant's profits arising out of their unlawful conduct (with interest thereon), and to be paid benefits due to Plaintiff under the policy that Defendants wrongfully retained by means of their unlawful business practices.

94.    Upon information and belief, Plaintiff alleges that, unless enjoined by order of the Court, Defendants will continue to operate their companies for their sole benefit and to the detriment of Plaintiff. No adequate remedy exists at law for the injuries alleged herein, and Plaintiff will suffer great and irreparable injury if Defendants' conduct is not immediately enjoined and restrained.

95.    Defendants wrongfully denied Plaintiff's insurance claim based on erroneous interpretations of its policy, in order to avoid their financial obligations to Plaintiff thereunder. Given the likely extended time period of the regional presence of COVID-19 cases, and the likely continued effect of the closure orders, Plaintiff

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

will almost certainly have similar insurance claims in the future, and Defendants will almost certainly apply the same or similar erroneous interpretations of the policy to wrongfully deny coverage. If Defendants' conduct in this manner is not restrained and enjoined, Plaintiff will suffer great and irreparable harm, as it has already paid for the policy in full, and Defendants seem committed to continuing their unfair and unlawful business practices of erroneously denying Plaintiff's claims. Defendants will continue to act in their own self-interest and to commit the acts that have damaged Plaintiff, and that continue to do so.

96.    Pursuant to California <u>Code of Civil Procedure</u> § 1021.5, Plaintiff is entitled to recover their reasonable attorney's fees in connection with Defendant's unfair competition claims, the substantial benefit doctrine, and/or the common fund doctrine.

97.    Plaintiff has no adequate remedy at law therefore Plaintiff is seeking injunctive relief.

**IV.**

**<u>FOURTH CAUSE OF ACTION</u>**

**(By Plaintiff for Unjust Enrichment against Defendant NORTHFIELD INSURANCE COMPANY, and DOES 1 through 50, Inclusive)**

98.    Plaintiff incorporates in this cause of action the allegations of Paragraphs 1 through 97 of this Complaint as though set forth herein in full.

99.    As a result of Defendants' conduct, as set forth above, Plaintiff may

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

lose the financial benefit of the amounts that Plaintiff paid for those portions of the Policy that were illegal, unfair, or deceptive.

100. By their wrongful acts and omissions, Defendants, and each of them, were unjustly enriched at the expense of and to the detriment of Plaintiff.

101. Plaintiff's understanding when it purchased its policy was that Defendants would provide coverage for covered losses.

102. Plaintiff purchased Defendants' policy and paid monthly premiums to Defendants, believing that coverage would be provided.

103. Defendants were unjustly enriched, among other reasons, by offering, and accepting premiums paid for, insurance coverages within the policy that purport and appear at first glance to provide certain coverages, but when read according to their plain meaning, lead to absurd requirements that are impossible to satisfy.

104. To enforce such coverage requirements would be unconscionable, void as against public policy, and inequitable. In the event such coverage requirements are interpreted and applied according to their plain meaning, it would be against equity to permit Defendants to retain the payments that they received from Plaintiff for any such aspect of the policy. This is because it is an illegal, deceptive, unfair, and/or fraudulent business practice to induce Plaintiff or any other person to purchase insurance coverage that will never cover a loss.

105. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged and is entitled to restitution in an amount to be determined at trial.

1   Plaintiff seeks restitution from Defendants and seeks an order from this Court

2   disgorging all monies paid to Defendants as a result of the illegal, deceptive, unfair,

3

4   and/or fraudulent business practices.

5       106. Plaintiff has no adequate remedy at law.

6

7                                   **V.**

8                   **FIFTH CAUSE OF ACTION**

9   **(By Plaintiff for Negligent Misrepresentation against Defendant**

10

11  **NORTHFIELD INSURANCE COMPANY, and DOES 1 through 50, Inclusive)**

12      107. Plaintiff incorporates in this cause of action the allegations of

13  Paragraphs 1 through 106 of this Complaint as though set forth herein in full.

14

15      108. Plaintiff is informed and believes, and on that basis alleges, that at the

16  time that Defendants made the promises and representations about the policy, they

17  did so without any reasonable basis to believe they were true and with the intent and

18
    knowledge that Plaintiff would rely upon them.
19

20      109. If Defendants' current position that it has no obligation to cover

21  Plaintiff's losses is correct, then the representations Defendants made within the

22
    policy were, in fact, false, and were made without any reasonable basis for believing
23

24  them to be true. If Defendants' current position is to be believed, then Defendants

25  did not plan or intend to insure losses associated with viruses or pandemics and, in

26
    fact, planned and intended the contrary.
27

28      110. As a direct and proximate result of Defendants' acts, Plaintiff has

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

sustained, and continues to sustain, damages in an amount in excess of this Court's jurisdictional limits, plus interest, for which Defendants are liable, including the premiums it paid to Defendants. The amount of Plaintiff's damages are not yet precisely known but will be established according to proof. Plaintiff will seek leave to amend this Complaint to more precisely allege the amount of their damages when the amounts are more precisely known.

## VI.

## SIXTH CAUSE OF ACTION

### (By Plaintiff for Declaratory Relief against Defendant NORTHFIELD INSURANCE COMPANY, and DOES 1 through 50, Inclusive)

111. Plaintiff incorporates in this cause of action the allegations of Paragraphs 1 through 110 of this Complaint as though set forth herein in full.

112. Under California Code of Civil Procedure § 1060, *et seq.*, the court may declare rights, duties, statuses, and other legal relations, regardless of whether further relief is or could be claimed.

113. An actual controversy has arisen between Plaintiff and Defendants as to their respective rights, duties, responsibilities, and obligations under its policy.

114. Resolution of the parties' respective rights and duties under its policy by declaration of the Court is necessary, as there exists no adequate remedy at law.

115. As alleged in detail above, Defendants and Plaintiff entered into the policy. (***Exhibit A***). Plaintiff has made all premium payments and otherwise

performed all obligations under the contracts, including giving timely notice of its claim.

116. Plaintiff paid the premiums in exchange for Defendants' promise to pay Plaintiff's losses for claims covered by the policy as described herein, including for business losses incurred as a result of the closure orders and/or the direct physical damage and/or loss caused by COVID-19.

117. Plaintiff has complied with all applicable provisions of its policy, including payment of the premiums in exchange for coverage under its policy.

118. Defendants, and each of them, have arbitrarily and without justification denied coverage and refused to reimburse Plaintiff for any losses incurred in connection with the covered business losses related to the closure orders and the necessary interruption of business stemming from the COVID-19 pandemic. On information and belief, Defendants did not independently review the closure orders or conduct any investigation of the premises before denying coverage.

119. An actual case or controversy exists regarding Plaintiff's rights and Defendants' obligations under the policy to reimburse Plaintiff for the full amount of the losses incurred in connection with the closure orders and the necessary interruption of business stemming for the COVID-19 pandemic.

120. Pursuant to <u>Code of Civil Procedure</u> § 1060, Plaintiff seeks a declaratory judgment from this Court declaring the following:

    a.  The losses in connection with the closure orders and the necessary

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

interruption of business stemming from the COVID-19 pandemic are insured losses under the policy;

b. Defendants, and each of them, have waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for the losses suffered by Plaintiff by issuing a blanket coverage denial without conducting a claim investigation as required under California law;

c. Defendants, and each of them, are obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the closure orders during the necessary interruption of their business stemming from the COVID-19 pandemic.

d. No policy coverage exclusions or limitations apply to exclude or limit coverage,

e. Plaintiff has suffered actual and covered loss of Business Income in an amount to be determined at trial, and

121. Plaintiff alleges and contends that Defendants wrongly denied coverage with respect to all the foregoing provisions.

122. Upon information and belief, Plaintiff alleges that Defendants dispute and deny each of Plaintiff's contentions set forth in this Cause of Action.

123. Plaintiff, therefore, seeks a declaratory judgment regarding each of

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

Plaintiff's contentions set forth in this Cause of Action. A declaratory judgment determining that Plaintiff is due coverage under its policy, as set forth above, will help to ensure the survival of its business during this prolonged closure made necessary by the closure orders and by the presence of COVID-19 at and around the insured premises during this global pandemic.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, KIDS INDOOR PLAYGROUND, INC. dba WE PLAY, prays for judgment against Defendants, and each of them, as follows:

1. For a declaration adopting each of Plaintiff's contentions set forth in the above Causes of Action for Declaratory Relief;

2. For injunctive relief enjoining and restraining Defendants' unlawful conduct as alleged herein, including but not limited to their unfair and unlawful business practices and their wrongful denials of coverage under the policy;

3. For general and compensatory damages in an amount to be determined at trial;

4. For economic and consequential damages arising out of Defendants' unreasonable failure to pay benefits owed under the policy;

5. For damages, including economic losses, in an amount to be determined according to proof at the time of trial;

6. For exemplary and punitive damages in an amount appropriate to

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

punish or set an example of Defendants;

7.    For Plaintiff's costs of suit;

8.    For attorneys' fees, witness fees, and costs of litigation incurred by

Plaintiff to obtain the policy benefits in an amount to be determined at

trial;

9.    For pre-judgment interest and all other interest to which Plaintiff is

entitled; and

10.   For such other relief as the Court may deem just and proper.

DATED: May 2, 2022                              **KEOSIAN LAW LLP**

                                        By: _____
                                            **Harout Greg Keosian, Esq.**
                                            **Eileen Keusseyan, Esq.**
                                            Attorneys for Plaintiff

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REQUEST FOR JURY TRIAL

Plaintiff, KIDS INDOOR PLAYGROUND, INC. dba WE PLAY, hereby requests a trial by jury.

DATED: May 2, 2022

**KEOSIAN LAW LLP**

By: _____

**Harout Greg Keosian, Esq.**
**Eileen Keusseyan, Esq.**
Attorneys for Plaintiff

KEOSIAN LAW LLP
16530 Ventura Boulevard, Suite 555
Encino, California 91436
1-818-986-9331

COMPLAINT